**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA

v.

TIFFANY HENRY, *et al.*,
    Defendants.

Criminal No. 17-216 (CKK)

---

**MEMORANDUM OPINION AND ORDER**
(December 1, 2017)

    This matter comes before the Court upon the Government's [9] Motion for Review and Appeal of Release Order with respect to Defendant Angela M. Cortez ("Cortez") and Defendant Cortez's [14] Motion in Support of Request for Release Pending Trial.[1] A federal indictment charges (1) Defendants Tiffany Henry ("Henry"), Cortez, and Jeremy Albrecht ("Albrecht") (collectively, "codefendants") with conspiracy to distribute and possess with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 846, (2) Defendant Henry with unlawful use of a communication facility, in violation of 21 U.S.C. § 843(c)(2)(A), (3) Defendants Henry and Cortez with unlawful distribution of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), (4) Defendants Henry, Cortez, and Albrecht with unlawful possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and (5) Defendants Henry, Cortez, and Albrecht with unlawful possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

    On October 30, 2017, D.C. law enforcement executed a search warrant with respect to an apartment leased by Defendant Henry. Based on the ensuing search, codefendants were each arrested at the apartment, processed in D.C. Superior Court, and released on their personal recognizance. Defendants Henry and Cortez returned to Defendant Henry's apartment. On November 9, 2017, the above-described federal indictment issued, and each of the codefendants was arrested on November 15, 2017. The codefendants initially appeared before Magistrate Judge G. Michael Harvey on November 15, 2017, and a detention hearing was scheduled for November 20, 2017.

    At the hearing before Magistrate Judge Harvey, Defendant Albrecht did not challenge the Government's motion for pretrial detention and was not released. Defendants Henry and Cortez did challenge the Government's respective motions, and Magistrate Judge Harvey ordered that they be released subject to conditions pursuant to 18 U.S.C. § 3142. At the Government's request, Magistrate Judge Harvey stayed the release orders to permit the Government time to appeal. Shortly after the detention hearing, the Government filed the presently pending Government's [9] Motion for Review and Appeal of Release Order with respect to Defendant Cortez, and the defense

---

[1] A separate Memorandum Opinion and Order shall address a parallel Government motion with respect to Defendant Tiffany Henry.

1

followed with the [14] Motion in Support of Request for Release Pending Trial. The Court held a hearing on the record on November 30, 2017, to obtain further information from the prosecution and defense counsel regarding Defendants Henry and Cortez, respectively, and the Court made certain findings; all of which are incorporated as part of this Memorandum Opinion.

The Court has reviewed Defendant Cortez's Pretrial Services Report for United States District Court, the Government's [6] Memorandum in Support of Detention, the Government's [9] Motion for Review and Appeal of Release Order, and Defendant Cortez's [14] Motion in Support of Request for Release Pending Trial; discussed this matter with Magistrate Judge Harvey; and considered the information obtained through the Court's November 30, 2017, hearing. For the reasons set forth on the record at the November 30, 2017, hearing and set forth below, the Court affirms Magistrate Judge Harvey's order releasing Defendant Cortez subject to the conditions he identified.

**I. BACKGROUND**

At the initial appearance before Magistrate Judge Harvey on November 15, 2017, the Government made an oral motion for temporary detention (a three-day hold) of Defendant Cortez. Magistrate Judge Harvey granted this motion, and the detention hearing was set for November 20, 2017.

The Government proffered evidence to Magistrate Judge Harvey, and again offered this evidence in their pleading on appeal, that Defendant Cortez had participated in a drug transaction arranged by an undercover officer of local law enforcement. The officer communicated directly with Defendant Henry to place the order, and Defendant Cortez arrived at the appointed location bringing the marijuana and THC-infused products that the undercover officer had ordered. This transaction was videotaped. Defendant Cortez was observed departing from and returning to 901 6th Street SW, #509A, Washington, DC 20024, where she was later found upon a search of the premises. The search yielded a large quantity of marijuana and THC-infused products, a smaller quantity of cocaine, and various implements for manufacturing and consuming marijuana and THC-infused products.

Magistrate Judge Harvey considered whether Defendant Cortez could be released subject to conditions pursuant to 18 U.S.C. § 3142. The Pretrial Services Agency ("PSA") had recommended on November 15, 2017, that, if Defendant Cortez were to be released, she be released on personal recognizance with required program placement and a weekly reporting in person.

Magistrate Judge Harvey, on setting the conditions for release, had determined that, under 18 U.S.C. § 3142, Defendant Cortez could be released subject to the following conditions: that she be released on a personal recognizance into the third-party custody of Jesse Salame, a City of San Antonio, Texas, police officer and Defendant Cortez's (ex-)brother-in-law,[2] at whose home she is

---

[2] Only at this Court's hearing did it come to light that the brother-in-law is formerly so. The Court finds that the difference does not affect its decision in light of other considerations discussed below, including the statements of Defendant Cortez's mother.

to live; that she report weekly in person in San Antonio, and comply with courtesy supervision there in their heightened supervision program, including electronic monitoring; that she not apply for, nor possess, a passport, and if she finds her passport, that she surrender it to the PSA; that she comply with weekly drug testing, and treatment, if necessary; and that she be subject to possible revocation of her bond as a result of any rearrest on probable cause for any subsequent offense. Furthermore, Magistrate Judge Harvey's order made clear that, *inter alia*, "any violation of a condition of release may result in revocation of release, pretrial detention or contempt" and that if Defendant Cortez does not "appear as required, [she] will be subject to prosecution and if convicted, the maximum penalties" may be imposed. ECF No. 10.

## II. THE BALANCE OF FACTORS MILITATES IN FAVOR OF RELEASING DEFENDANT CORTEZ SUBJECT TO CONDITIONS

The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community. An offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act raises a rebuttable presumption that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

The rebuttable presumption clearly applies in this case. Because of the cocaine that was seized from the apartment where Defendant Cortez was living, she has been indicted for unlawful possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), among other charges. The prosecution and counsel to Defendant Henry agree, and counsel to Defendant Cortez did not suggest otherwise at the Court's hearing, that the statutory maximum term of imprisonment, thought to be twenty years under 21 U.S.C. § 841(c), is attributable to this cocaine charge rather than to the marijuana-related charges.

In conducting its analysis of the rebuttable presumption, the Court examines the available information that touches upon: (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community. *See* 18 U.S.C. § 3142(g). Between a concern for the safety of the community and the risk of Defendant Cortez's flight, at the hearing the prosecutor indicated that the Government's concern is for the safety of the community.

Upon consideration of these factors, the Court determines that Defendant Cortez has provided evidence to rebut the presumption of detention, which requires "clear and convincing evidence" under 18 U.S.C. § 3142(f). Accordingly, the Court orders that Defendant Cortez be released pending trial subject to the conditions set forth by Magistrate Judge Harvey, as discussed above.

### *1. Nature and Circumstances of the Offenses Charged*

Based on the allegations contained in the Government's [6] Memorandum in Support of Detention, the charges underlying this case originated with the Metropolitan Police Department's

3

("MPD") receipt of an anonymous tip flagging suspicious activity and possible drug sales at what has since been identified as Defendant Henry's address. The tip indicated that Defendants Henry and Albrecht lived at the apartment and provided certain other identifying information. The government also received complaints that the apartment emitted a smell of marijuana that was "continuous and pervasive immediately upon reaching the fifth floor of the building," and that "hundreds" of suspected drug transactions were taking place there. As part of its investigation, law enforcement identified a social media account belonging to Defendant Henry through which she advertised sales of marijuana and THC-infused products. An undercover MPD officer made arrangements with Defendant Henry to purchase certain of these products, and Defendant Cortez showed up to hand the officer a gift bag containing the products. The transaction is recorded on video.

Upon obtaining and executing a search warrant, MPD officers searched and recovered from the apartment a substantial amount of marijuana. At the Court's hearing, the Government made a proffer that the Drug Enforcement Administration was processing material seized from the apartment that would amount to over 1,000 exhibits. A sample of photographs of such exhibits showed copies of online and other text-based communications regarding the sale of marijuana, as well as photographs of what appear to be marijuana plants and related paraphernalia in the apartment.

In its [6] Memorandum in Support of Detention, the Government provided the following list of "*some* of the items recovered during the course of the search":

- Approximately 1 kilogram of plant-like substance, which field-tested positive for the presence of THC.

- Several packages of amber wax-like and crystallized items that field-tested positive for the presence of THC.

- Assorted items and edibles that contained THC packaged in various containers including labeled glass jars, heat-sealed plastic envelopes, and plastic cylinders.

- Several items containing a white powdered substance that field-tested positive for cocaine with a combined weight of 71.5 grams.

- Several caches containing U.S. currency located around the residence totaling approximately $75,683.12.

- Numerous unidentified pills.

- Numerous digital scales, grinders, hand-rolled cigar machines, RX label stickers, medicine bottles, and ledgers.

- Numerous hand-rolled cigars, syringes, vape pens and glass marijuana smoking instruments.

The Government also indicated that "[a]dditional edibles items recovered include cookies, tubes, mushrooms and gummy candies, all of which are suspected to contain THC."

4

As for the 71.5 grams of cocaine that was found, discussion at the hearing and a copy of an exhibit shared with the Court showed that the cocaine was allegedly recovered from a "fake book." This fake book was located in a brown dresser in the apartment's living room. Inside of this fake book was an indentation cut-out in which the cocaine was found in one or more plastic bags.

Based on allegations of Defendant Cortez's involvement in the transaction with the undercover officer, and of a substantial amount of drugs recovered from an apartment where she was living, the Court finds that the nature and circumstances of the charged offenses weigh in favor of detaining Defendant Cortez.

### 2. *Weight of the Evidence Against the Defendant*

The strength of the evidence against Defendant Cortez with respect to marijuana is notable, although less than against Defendant Henry. The Government allegedly has video evidence of the transaction taking place between Defendant Cortez and the undercover officer in which Defendant Cortez provided marijuana and THC-infused products. Although Defendant Cortez also allegedly was observed departing from, and returning to, the apartment which a search under warrant later showed to contain the marijuana products and paraphernalia described above, this apartment was leased to Defendant Henry, who was allegedly conducting the online activities at issue. Moreover, Defendant Cortez resided for only three weeks in the District. On this record, her only involvement in the activities at issue appears limited to delivering the drugs to the undercover officer.

The evidence linking Defendant Cortez to cocaine is also questionable. The cocaine was allegedly recovered from the living room of an apartment occupied by three people. Although, according to the Pretrial Services Report, Defendant Cortez did "test[] positive for Cocaine in the past 30 days," the Government does not argue that the cocaine recovered from the apartment is attributable specifically to Defendant Cortez, rather than to either of the other two occupants (*e.g.*, Defendant Henry, who was the lease holder).

Although less cocaine than marijuana was involved, the maximum statutory penalty of twenty years is much more severe than for marijuana. Counsel to Defendant Henry estimates, and Defendant Cortez's counsel did not suggest otherwise at the Court's hearing, that the advisory Sentencing Guidelines provide for an applicable range of only 15-21 months in prison. ECF No. 13, at 3-4. The Government indicated that it has not yet performed its own calculation. Moreover, the actual calculation may be different depending on which offense characteristics apply, in particular because Defendant Cortez's involvement in the alleged activities was almost certainly less extensive than Defendant Henry's. In short, it appears that the seriousness of the penalty facing Defendant Cortez is less significant in practice than the maximum penalty would suggest.

As mentioned, Defendant Cortez's involvement is less significant compared with Defendant Henry, if not also Defendant Albrecht (about whom the Court has less information). Defendant Cortez's involvement in the sales operation appears on this record to be limited to delivering the drugs to the undercover officer. The extent of her responsibility for the marijuana and THC-infused products recovered from Defendant Henry's apartment is unclear, but given that

5

she resided in the District for only three weeks prior to her initial arrest, it is unlikely that this responsibility is substantial.

Accordingly, the Court finds strong evidence against Defendant Cortez with respect to some charges, but some aspects, particularly regarding the cocaine but also the marijuana, reduce the weight of this evidence.

### *3. History and Characteristics of the Defendant*

Defendant Cortez's history and characteristics are much more positive. Defendant Cortez grew up in San Antonio, Texas, where she lived until only three weeks prior to her initial arrest. There is no indication that she was involved in any sort of drug activity in San Antonio. She came to the District of Columbia with Defendant Albrecht, who has not challenged his pretrial detention. She is 33 years old with "no contacts with the criminal justice system (other than traffic matters)" before her initial arrest in this matter. ECF No. 14, at 2. Defendant Cortez has completed a high school education, received some college education, and until departing San Antonio, held a job as a valet for a company that provides valet services to several different restaurants. At the Court's hearing, Defendant Cortez's counsel indicated that that job remains available upon her return. She was released by D.C. Superior Court on personal recognizance from October 31, 2017, to November 15, 2017, and she incurred no additional violations, nor did she abscond. While her Pretrial Services Report indicates that she "tested positive for Cocaine in the past 30 days," that report also indicates that her subsequent drug test on November 8, 2017, was negative, a point corroborated at the Court's hearing by Defendant Cortez's counsel. Accordingly, this factor weighs heavily against pretrial detention.

### *4. The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Person's Release*

As indicated above, the Government is concerned that Defendant Cortez's release would endanger the safety of the community. The conditions placed by Magistrate Judge Harvey on Defendant Cortez's release would ensure the protection of the community's safety. Magistrate Judge Harvey spoke with Jesse Salame, Defendant Cortez's ex-brother-in-law, and was satisfied after some independent verification that as a City of San Antonio police officer Mr. Salame will keep close supervision over Defendant Henry's activities.

During the Court's hearing, the Court spoke on the record with Elena Cortez-Castillo, Defendant Cortez's mother, who confirmed that she has no concerns about Defendant Cortez living with the ex-brother-in-law. She represented that Mr. Salame is "still part of the family." Ms. Cortez-Castillo will be available to assist as needed, as she lives and works from home only about one mile from Defendant Cortez's employment in San Antonio. Ms. Cortez-Castillo owns Castillo Training, under which auspices she provides "training to state air-conditioning contractors, teaching them the law and codes and everything they need to know to properly install systems." The Court is satisfied that, between Mr. Salame and Ms. Cortez-Castillo, Defendant Cortez would be well-supervised by responsible family (or nearly family) members.

Moreover, the magistrate's conditions require participation in the heightened supervision program, including electronic monitoring and drug testing. Defendant Cortez has been made aware that she will be subject to penalties if she does not abide by these or the other conditions set forth in Magistrate Judge Harvey's original order, including returning for hearings as necessary. Her mother and brother-in-law have taken responsibility, with the necessary financial support, for ensuring that Defendant Cortez can travel to and from her hearings in this Court.

These conditions of release limit Defendant Cortez's ability to get involved in the alleged illegal activity again and accordingly "reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). This factor too weighs heavily against pretrial detention.

### III. ADDITIONAL CONSIDERATIONS

Since the Court's hearing, the Court has confirmed that Defendant Cortez will be monitored by the U.S. Pretrial Services Office of the Western District of Texas as part of its heightened services.

Defendant Cortez's counsel represented that upon Defendant Cortez's release from confinement, Ms. Cortez-Castillo will take custody of the defendant only for purposes of driving her from the District of Columbia to San Antonio, where she will transfer custody of the defendant to Mr. Salame.

### IV. CONCLUSION

Upon consideration of all of the evidence and the factors set forth in 18 U.S.C. § 3142(g), and the release conditions set by Magistrate Judge Harvey pursuant to § 3142(c), the Court finds that there is not clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Rather, the Court finds that the combination of conditions imposed by Magistrate Judge Harvey would reasonably ensure the safety of the community were Defendant Cortez to be released pending trial. Defendant Cortez has successfully provided evidence sufficient to rebut the presumption in favor of pretrial detention required by § 3142(e)(3)(A).

Thus, for the foregoing reasons, it is this 1st day of December, 2017, hereby

**ORDERED** that the Government's [9] Motion for Review and Appeal of Release Order is **DENIED**; and it is

**FURTHER ORDERED** that Defendant Cortez's [14] Motion in Support of Request for Release Pending Trial is **GRANTED** pursuant to 18 U.S.C. § 3142(c); and it is

**FURTHER ORDERED** that Defendant Cortez be released into the third-party custody of Jesse Salame under the conditions established in the Court's [20] Release Order.

**SO ORDERED.**

                                                /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge